Our next case is Fireblok IP Holdings v. Hilti, Inc. and Rectosedal, Inc., 2020-2095. Mr. Benchel. May it please the Court. In deciding summary judgment, the lower court overlooked three areas that showed there are still genuine issues of material fact. Number one, there are no normal business records demonstrating that any actual sales of the accused products, let alone the products that were subject to the license, were conducted. Number two, to the extent Rectosedal sells any products to Hilti, they are not covered by the license. And number three, the Court overlooked the impact of Rectosedal's failure to mark the licensed product with Fireblok's patent number. Now, moving to the first issue of the normal business records, simply put, there are no business records that demonstrate any sales. There's no contracts naming the products. There's no purchase orders. There are no shipping information. There's no evidence of payment. Think about that. These are two multinational corporations, and there are no documents whatsoever evidencing that there were any sales between these. Now, the lower court noted the absence of documents and said that that was unusual. Now, there are documents that have been provided, but what has been provided makes the matters worse. So first, we have made-up purchase orders, and this is in Appendix 700. These are purchase orders that were created strictly for the purpose of litigation to show what a purchase order would have looked like if it existed. And there are only two of them, and they're only from 2017. There's also, at Appendix 704, Hilti's sales of the accused products, but this is annualized to 2017, meaning it's only for 2017, and it's been annualized, so we don't know the details of what those sales were. Moreover, we don't know where this data came from. Another made-up document comes from Hilti in the form of if purchases from RectorSeal, and that's at Appendix 718. There, Hilti is listing all of their purchases for the accused product from RectorSeal. RectorSeal also provided the counterpart document, their sales of products, of these products to Hilti, and that's at 786. The problem is these two documents are identical. The font is the same. The pagination is the same, which you would expect from different corporations. More importantly, the data enclosed in those documents are identical. For example, the vendor numbers are the same, meaning Hilti refers to RectorSeal by the same vendor number that RectorSeal refers to Hilti. In addition, in Hilti's report, the report that lists their purchases from RectorSeal, there's a column for Inventory Received. This is the inventory they received from RectorSeal. The RectorSeal document, the document of RectorSeal sales to Hilti has the same Inventory Received column. You would expect, since RectorSeal is making the sale, that RectorSeal would have something like Inventory Sent or Inventory Shipped, but that's not the case. And we know what happened here. Hilti produced this document of its sales. Fireblock sought in a subpoena the same information, and RectorSeal simply took the same document and produced it as its own sales. Finally, RectorSeal produced the invoices. So, two days before its Summary Judgment Briefing was to begin, RectorSeal produced about 220 documents that they say are invoices of the product. And to be clear, this is at Appendix 1035. But these invoices do not mention the two products that RectorSeal was allowed to sell under the license. RectorSeal was allowed to sell the MediCalc BoxGuard and MediCalc CoverGuard products. The invoices that RectorSeal provided were for various different things, but seem to all have a contraction for FireStop, which is the product that Hilti sells. So, at best, this evidence, the invoices show that, in fact, that there were products that were purchased by Hilti, not necessarily those that they're allowed to be sold under the license. And that's consistent with what RectorSeal's own attorney represented to the lower court. During the... Judge Lori, I'm wondering if you lose either way, because if you're right, that the evidence doesn't show the products all came from RectorSeal, doesn't mean there was... that mean there was no infringement? And if they did come from RectorSeal, then the license covered them. Don't you lose either way? Well, we respectfully disagree, and there's two reasons for that. First of all, if they didn't come from RectorSeal, the products did not come from RectorSeal, then these are products that are infringing FireBlox patents. And for all intents and purposes, Hilti has already acknowledged that they practiced the 167 patent FireBlox for these products. If they came from RectorSeal, then you have to decide, then we have to determine, and it seems that this is the case, whether these products are the same. Under the agreement, under the settlement agreement, RectorSeal was allowed to sell two products. They were allowed to sell the box guard and cover guard products under either RectorSeal's name or another trade name. They weren't allowed to sell something that was similar to it, something that was chemically similar. They were supposed to be the same. The problem that Hilti has is that RectorSeal's attorney, and it's truthful, RectorSeal's attorney represented to the lower court that these products are not identical. During the discovery process, FireBlox issued a third-party subpoena under Rite-O-Lax, UL, and RectorSeal sought to have that quash, that subpoena quash. During the August 2019 hearing, RectorSeal's attorney represented that RectorSeal was selling similar but not identical products, and that's at 359 of the appendix. In addition, at 345 of the appendix, RectorSeal's attorney said that Hilti's product might have slightly different chemical composition than the product that RectorSeal takes to market in its own name. Well, again, the license does not allow them to simply choose what they want to sell. There were specific requirements of what to sell, what products would be subject to the license. In addition, RectorSeal had gone ahead and told UL it was no longer making the products for Hilti. So, to give a little background, for Hilti to have the same UL certification as RectorSeal because both RectorSeal and Hilti represented that these were the same products, the Hilti product had to be, in UL's parlance, multi-listed, meaning that RectorSeal went to UL and said, I'm making this product. It's the same product. And the multi-listing began in 2006, but that ended in 2008 with an email that RectorSeal sent to UL. And in that email, RectorSeal, in the email appendix 200, RectorSeal said that they would no longer be manufacturing the firebox inserts for Hilti. As a result of that, UL terminated the multi-listing with the two products. RectorSeal, again, in January 2009, confirmed this, saying that Hilti was only buying a small quantity of putty sticks. And putty sticks are different from the product at issue. And that's in appendix 1513. Now, do you think that there were genuine issues of material fact here? Yes, Your Honor. Moving forward, to the extent that RectorSeal actually sold products, the products are similar, perhaps, but not the same. First of all, on the face, the products are different. There's a different, under the RectorSeal product, it requires a three-eighth-inch hole for the ground wire to go through, whereas Hilti's product only requires a split in the corner. RectorSeal's product has additional UL certification for accelerated aging and high humidity. Hilti does not. And you would expect if they were the same products, they would have the same. In addition, Hilti, on its own, went ahead and had its products tested by UL in 2010. Again, something that wouldn't have been necessary, had the products been the same. And so, between the invoices and the RectorSeal's attorney's representations, we believe that it shows that to the extent that any products were being sold, they were not necessarily the products that were the subject of the license. Then we get to the license. Under the license, it was an essential term that RectorSeal mark its products with Fireblocks patent number. And we know this because, first of all, that section is part of all the other essential terms, or that requirement is all part of the other essential terms of the contract. In other words, it didn't even apply immediately because the provision says the labeling shall apply upon the exhaustion of inventory labels and upon the reordering of labels for RectorSeal products. In other words, it didn't seem to be so immediate because it didn't apply upon the execution of the contract. And that's correct. And what had happened in that case was RectorSeal had additional labels. They asked it to be extended to the reorder of the labels. The labels were reordered about a subsequent litigation, but that was a condition subsequent and does not negate the fact that this was an essential term of the contract. Once the reordering of the labels occurred and RectorSeal failed to mark the products, they lost their rights under the agreement and therefore were selling products that were infringing, including those products that were We will save your rebuttal time. Thank you. Mr. Bacchia. May it please the Court. Your Honors, we ask that the lower court's ruling on summary judgment be affirmed, but its rulings on Rule 11 and Section 285 motions be reversed because of one simple fact. Healty always has and always did obtain its firestop box inserts from RectorSeal. That product is the Medi-Coq box guard that's identified in the license, but labeled differently simply because it's identified by the box. Records? I'm sorry, Your Honor. Is it correct that there were no records to show that? No, that's not correct, Your Honor. The issue here with respect to the records is that the way that Healty saved its information and kept its database of inventory was in a database that you could pull information from, but it would be ad hoc. We didn't have actual purchase orders that we would provide that showed that information. We would have to pull it from the database and then provide it in a sample PO, which is what Healty did. There are records going back to 2012 that was supplemented by Healty showing that Healty was getting the firestop box insert from RectorSeal, and as Mr. Benchel noted, RectorSeal produced over 200 invoices where it was providing the firestop box insert to Healty. It's not just the contemporaneous business records. There are also multiple declarations and other representations made in writing to FireBlock prior to the filing of this lawsuit that the MetaCoff box guard is the same product that RectorSeal gives to Healty as the firestop box insert. There hasn't been any dispute that if Healty obtains the firestop box insert from RectorSeal and it's the same product as the MetaCoff box guard, then it's covered by the license. And that's just the fact of it. It's true. They've gotten the same product from this vendor. And there's been a lot of frustration with this litigation, and that's why we'll talk about the Rule 11, Section 285 motions, because there is no other way for us to have proven, for Healty to have proven to FireBlock that it only sourced this product from RectorSeal. Now, Mr. Benjamin says that there were no products, there were no records showing these sales, and that's not true. There were limited records that were provided to sample PO, but whenever there was a request for the supplementation of that information back in 2012, Healty provided it. And the problem we have here is that FireBlock seems to be insisting that the records have to say MetaCoff box guard, but that's not how Healty labels the product. So we have a declaration from a vice president of RectorSeal, Riley Archer, where he says the MetaCoff box guard is the firestop box insert. We have a declaration from, a couple declarations from Healty, from Mr. Schofield, where he says the same thing. And then another declaration from RectorSeal again, Ms. Ava Ackerman, where she says and repeats the same thing. So all of these declarations... Mr. Benioff, is it your view that the burden to show infringement is on the patent owner, and if there is, as a talent says, a lack of records, that falls on the patent owner who has the burden to show that the products were not all from RectorSeal? I do agree with that, Your Honor. I think certainly we as the defense and with the affirmative defensive license need to show that there is a license and that we are entitled to protection under that license, which we've done. It fell on FireBlock then to identify one, to identify one that it got from someplace other than RectorSeal, and there is absolutely no evidence of that in the record, because there can be no such evidence. What about the failure to mark? So the failure to mark, there's a couple of issues with that, Your Honor. First... Is it a material breach? No, Your Honor, we do not think it's a material breach. But if it were, that kind of breach, the remedy for FireBlock is to sue RectorSeal for breach of contract. It's a secondary damages issue that it raises. It doesn't turn these products that were licensed into no longer being licensed products, especially there's the point that Your Honor raised that the requirements mark was not something that was immediate. It was only required once RectorSeal ran out of the inventory it currently had, the labels that it currently had. Also, once this problem was identified to RectorSeal and HILTI, HILTI addressed it and added the patent number to the label for HILTI's products. So the patent number was placed there. There was some time where it wasn't, but once that issue came to HILTI's attention, it was addressed. Additionally, FireBlock's argument, some of what I heard today was the first time I'd heard it, but also the arguments that are made in the appeal, these arguments weren't raised to a sufficient level below. Probably the best example or best evidence of that is footnote three in HILTI's, excuse me, FireBlock's yellow brief where they said, where they admitted that the authority they were relying upon, they weren't aware of until after they filed their opening brief in this appeal. Clearly they didn't raise it below. So we think that it was waived. Even if that argument wasn't waived, however, the failure to mark does not turn these products into unlicensed products. The issue with RectorSeal saying that it would... Mr. Bernal, it's Judge Clevenger. What about FireBlock's general counsel who says that products are not the same? So it wasn't, I'm sorry, you said FireBlock's general counsel? Your adversary is arguing that somebody's general counsel, the attorney, pardon me, the attorney at the hearing at pages 259, 269, attorney testimony adverse to you on the sameness of the products. Well, Your Honor, that wasn't testimony. She was arguing at a hearing on a motion to quash a subpoena to her client RectorSeal. The attorney admitted that she wasn't completely aware of the chemical properties of these products. And we've seen FireBlock kind of twist the words that she used to make an argument other than what she was making. What she said was that opposing counsel at the time, Mr. Benchel, is trying to argue that RectorSeal and HILTI are saying these products are identical. They're not. When she said they're not, she didn't mean the products are identical. She meant that RectorSeal and HILTI weren't trying to say that every single product that you test is going to be identical because there can be minor differences in the chemical properties of these various products that are within margins of error for when you're producing them or so they're not different products, but the chemical properties might be a little bit different. Now, what FireBlock submitted in its objections to the report recommendation on summary judgment, it tested a 2017 HILTI insert, a 2020 HILTI insert, and a 2020 RectorSeal box card. The two 2020 products were the same because they had the same source, RectorSeal. There was no 2017 RectorSeal product that FireBlock tested, but if it had tested it, the products would have been the same because HILTI only ever gets the products from RectorSeal, and that fact has been made clear to FireBlock from years before the litigation was filed, right before the lawsuit was filed, shortly afterward in the Rule 11 motion, in the motions for summary judgment. Time and again, there have been multiple declarations and documents showing that all the products that HILTI gets are from RectorSeal, and they are the MediCorp box card. There is no evidence from FireBlock that contradicts that. The only thing FireBlock has is this disbelief. They don't believe that it's true. They appear to believe that these three individuals, at least the two VPs of RectorSeal and the VP and general counsel at HILTI are lying, but there's no evidence to support that, and just not believing the evidence is not a sufficient basis to continue to pursue litigation. So, that's what takes me then to our Rule 11 and Section 285 motions. At some point, a party has got to have a good faith basis for alleging claims of infringement, and FireBlock has known that this license exists, that HILTI's obtained from RectorSeal under the license, and it files suit anyway. And after giving them dozens more documents supporting our position, they continue to pursue those claims. And it continues to pursue it only without any evidence to support it. One of the arguments made by FireBlock is that this case is not exceptional, because just because they lose on summary judgment doesn't mean the case is exceptional. And that proposition of law is generally true, but they didn't just lose here. They never had a chance to win. They knew all of these facts from the outset of the litigation, from years before the litigation, and they filed suit anyway. And at the summary judgment stage, Magistrate Judge Payne referred to HILTI's evidence as a plethora of evidence, and that FireBlock had not identified any evidence to show that these or it ever did exist. FireBlock also took no deposition, didn't test the veracity of the statements made under a penalty of perjury in these declarations. So, they had no evidence on their side at no point while there was a mountain of evidence on the other side. And although the court saw that there was no evidence at summary judgment stage, when it came to addressing the exceptionality of the case, it found now that FireBlock didn't have all the information it needed or that it had a good reason to not believe the evidence. There simply isn't any evidence to support that. They just didn't believe whatever our arguments were. They just didn't believe that those arguments were true. They didn't believe the evidence that we gave them. They didn't give any evidence in return. I think it's fair to say that they've identified some of the changes in the marketing of the products. The patent number wasn't on there. I'm running out of my rebuttal time, Your Honor, so I'd like to reserve the rest of that time. You can do that. Of course, you'll only be able to use that if there is something on the cross-appeal raised by appellant. Understood, Your Honor. Mr. Bentschel has some rebuttal time. Yes, Your Honor. I'd like to go to the exceptional case in Rule 11 issue. The lower court in this particular case did not abuse its discretion in finding this is not an exceptional case or that FireBlock violated its Rule 11 obligations. On page 27 of the appendix, the court found that FireBlock's case was weak, which is why it's found in favor of HILTI for summary judgment, but not so weak that it the others. That's what Optane tells us is the basis for an exceptional case. Rather here, HILTI's argument seems to be that since FireBlock lost at summary judgment, this case has to be exceptional. Of course, this would lead to an absurd result that any loss at summary judgment would render the case exceptional. Now, Mr. Bonilla just said that HILTI, that FireBlock never had a chance to win to begin with, but the court disagreed with that. The court recognized that FireBlock did not have all the information it needed, and it said that in view of the missing information, plus the evidence that FireBlock acquired during the pre-suit investigation, and that helps justify and explain FireBlock's belief that the decision for its decision to of the appendix. The further evidence developed during discovery supports FireBlock's belief. Now, Mr. Bonilla talked about the fact that FireBlock had no evidence. That's simply not true. Aside from the non-evidence and the lack of evidence that the court acknowledged was unusual, we had Rector Seals' attorney's admission. Now, Mr. Bonilla said that she was unfamiliar with those what she said during the hearing when she was asked why she was there quashing a UL subpoena. The Rector Seal attorney said that she had not been privy to the UL documents, but certainly she was making representations pursuant to the rule of an obligation that said that these are not the they were no longer making the product. Now, this ceased the multilisting in 2008. That multilisting did not begin again until 2019. That would have been after this case was started. So, based on that, the FireBlock was well within its right to not only bring this case, but to continue to pursue it. Turning quickly to the Rule 11 issue, we're a little confused why, and I think the lower court was too, why Hilty persists in this Rule 11. Summary judgment was found in their favor. The case was dismissed with prejudice. That's what they were seeking through Rule 11. So, it seems to us that their Rule 11 motion is moot at this point. However, we agree with the lower court that Hilty failed to identify which pleading and what part of the pleading was sanctionable under Rule 11. And on those basis, we ask you to reverse the finding of summary judgment on behalf in favor of Hilty and affirm the lower court's decision with regard to the exceptional case. Thank you, Your Honors. Thank you, Mr. Benchel. Mr. Vernea has some rebuttal time on the cross-appeal. Thank you, Your Honor. Mr. Benchel noted that on page 27 of the appendix, Judge Schrader below called FireBlock's case weak. He didn't just call it weak. He said it was undoubtedly weak. And that reminds me of the Inventor Holdings v. Bed Bath & Beyond case. In that case, during the argument on that appeal, it was a 285 appeal after a patent had been found ineligible under 101, Judge Chan during the argument noted that Inventor Holdings' case was woefully weak. And then in the opinion, it was written as objectively weak. Here, we have a federal judge noting that the plaintiff's case was undoubtedly weak. And that's important because that's what makes this case stand out from others. It's not just that FireBlock lost. It's not just that the arguments were weak, or not supported, or that there was no evidence, or that the evidence that was provided was referred to by the lower court as gross speculation. It's that putting all those things together, you have an undoubtedly weak case that was undoubtedly weak when it was filed. And the point about the Rule 11 motion is actually an apt one. The point of the Rule 11 motion was to end the case then, to be done with the case at that earlier stage, because there was no ground for it to continue. The statements in the pleading were false. There was no evidence to support them, nor could there ever be evidence to support them. And yet, we find ourselves here, months and months later, still litigating this issue, still expending resources to try to prove a negative, that there was no other insert that ILTI got from anybody that's worked in records. At some point, there's got to be good-faith basis for filing claims. There was no such basis here when this case was filed. And the evidence that never had that before. And every time they pointed to something, like the record seal attorney's comments, we had evidence to explain it. There was a clerical error, or in particular here, paragraph 12 of Ms. Ackerman's declaration. This is the appendix, page 1009. In paragraph 12, she explains that while the packing is different, a detailed physical and chemical comparison of a single private label insert to a single box card could exhibit immaterial differences within the bounds of typical manufacturing tolerances. She goes on to say that the private label insert that RectorSteel has sold to ILTI is the same as the product RectorSteel sells in the market as a box card. We've told ILTI that from the beginning. That fact was true then. It is true now. They never had any evidence to contradict that. And yet, we've had to go through litigation, go through the summary judgment process, and now this appeal. There was no good basis to file it, and there is none to continue litigating it. And that is the kind of case that stands out from others. And therefore, we ask this court to reverse the lower court's decision with respect to the Rule 11 and Section 285 motions. Thank you, Mr. Menillo. We thank both counsel and the case is submitted. The Honorable Court is adjourned until tomorrow morning at 10 a.m.